IN RE SCOTT DILLINGHAM'S APPLICATION FOR LICENSE TO PRACTICE LAW.

(Filed 10 September, 1924.)

1. **Attorneys at Law—License to Practice — Applicants — Protest — Procedure.**

Where an applicant to practice law has complied with the preliminary requirements of the statute and the rules of Court as to his ability and moral character, etc., to stand for his examination by the Court, and pending his examination a protest has been filed as to his moral fitness to practice this profession, the matter of granting him a license becomes one of general interest, and he may not then voluntarily withdraw his application and stop the inquiry of the Court entered upon under the protest filed.

2. **Same—Burden of Proof.**

The burden is upon the protestants to show the moral unfitness of an applicant for examination to practice law when the applicant has complied with the preliminaries of the statute and the rules of Court relating thereto.

3. **Same—Statutes—Rules of Court—Character.**

Where protest has been made in the Supreme Court to granting applicant a license to practice law, and the protestant has shown that the applicant has been convicted in the near past of violating the criminal

law of the State, which is not denied, evidence offered by him tending to show that he has since for a period of twelve months lived a proper life is insufficient to show that his character has been restored or that he is now entitled to his license. Attention to the new rules regulating the admission of applicants to practice law is called to the attention of the profession by Hoke, C. J., and the observance of such rules emphasized by him.

Hoke, C. J. The portions of our statute law more directly applicable to the questions presented, and appearing chiefly in C. S., chap. 4, provide in effect that no person shall practice law in this State without first obtaining license to do so from this Court. That all examinations shall be in writing and based upon such course of study and under such rules as the Court may prescribe. That all applicants who satisfy the Court of their competent knowledge of the law and of their upright character shall receive license to practice in all the courts of the State.

Second, that examinations for license to practice law shall be held in the city of Raleigh on Monday, one week prior to the Spring and Fall Terms of the Court respectively, and before being allowed to stand examinations each applicant must be 21 years of age or will arrive at such age before time for the next examination, and must file with the clerk a certificate of good moral character signed by two attorneys who practice in this Court, and deposit the fees specified in the law.

In addition to these provisions, the rules of this Court, formulated under and in furtherance of the statute and appearing in 185 N. C., 787-788, require among other things that each applicant shall file "a certificate of the dean of a law school or a member of the bar of this Court that the applicant has read law under his instruction or to his knowledge or satisfaction for two years, and upon examination by such instructor has been found competent and proficient in said course, etc."

At the time for entering on the examination of the August class, 1924, the present applicant, resident in Asheville, North Carolina, being among them, there appeared on our files a formal protest by prominent members of the Asheville bar against issuing a license to this applicant on the specified ground that "he is not a citizen of upright character," as contemplated and required by the law.

The class, an unusually large one, being here ready, it was considered advisable to proceed with the examination, and the applicant, having met the preliminary requirements, was allowed to take the same with the others, and having passed a very creditable examination showing that he had a competent knowledge of the law, the question of the

protest, in which a large proportion of the Asheville bar had in the meantime joined, was directly presented. Thereupon, notice having been duly issued and served on the applicant and protestants, an investigation was entered on before the Court at chambers in the city of Raleigh on 4 September, 1924, wherein the protestants were represented by the Hon. James G. Merrimon, designated by the Asheville bar for the purpose, and the applicant, hereafter called respondent, appeared in his own proper person.

In *limine,* respondent moved that he be allowed to withdraw his application, but on objection the Court ruled that he having persisted in the face of the formal protest and made and tendered for consideration his examination paper, the matter was no longer under his exclusive control, and being of opinion that the question presented was now one in which the profession and public generally were vitally interested, directed that the hearing proceed.

Thereupon, the burden being on the protestants, they offered numbers of affidavits and certifications of court records which disclosed a series of acts by respondent in the years 1919, 1920 and 1921, amounting in many instances to violations of the criminal law, including obtaining goods by false pretense, larceny, or conspiracy to commit it, forgery, extortion and others, all of them involving moral turpitude and showing him now utterly unworthy of the honorable and important position to which he aspires.

The respondent makes no substantial denial of these charges, but claims they were incident to or connected with respondent's failure in business at the times referred to and all occurred prior to the year 1922. That in this latter year, having become convinced of the error of his ways, he turned from his evil practices and has since demeaned himself as a good citizen. In support of this claim he offered a certificate of date, May, 1924, signed by several prominent citizens of Asheville and vicinity, some of them holding official position there, to the effect that for the past twelve months the respondent had been actively engaged in business in the city of Asheville, and that having occasion daily to observe him, they cheerfully certify to his good conduct during that time and give it as their decided opinion that he is rapidly regaining the position of respect and confidence which he formerly held in the community, and that the signers confidently feel that he is now making a good citizen of his county and State, etc. Respondent then closed his statement with the assertion that whether a license be granted him or not, he intends to persist in his present course of well doing.

In regard to this certificate, it was pertinently suggested by protestants that same, restricted in its terms, was given in reference to respondent's

recent conviction in the courts of Tennessee of conspiracy to violate the Federal Automobile Theft Act, and with the view of affecting a mitigation of his punishment, a time and occasion when men rarely refuse to do what is permissible to aid a human being in distress, but neither the certificate presented, nor the closing statement of respondent's purpose, commendable as it is, suffice as an assurance to us that he has the upright character required for lawful issuance of this license.

"Character," said Mr. Erskine in the trial of Thomas Hardy for high treason, "is the slow-spreading influence of opinion arising from the deportment of a man in society, as a man's deportment, good or bad, necessarily produces one circle without another and so extends itself till it unites in one general opinion."

Even more is this true when the effort is a restoration of a character which has been deservedly forfeited. It then is a question of time and growth.

An attorney at law is a sworn officer of the court to aid in the administration of justice. He is sought as counselor, and his advice followed in the most important and intimate relations of life. There is doubt if any profession affords an equal opportunity for fixing the standards and directing the civic conduct of his fellows. It is of supreme importance, therefore, that one who aspires to this high position should be of upright character and should hold, and deserve to hold, the confidence of the community where he lives and works. For this honorable association the respondent has not qualified himself, in fact or law, and we are all of opinion that his application for license be denied.

In the course of the hearing it was disclosed that only by the merest chance was the fact of the present application made known. In view of this, and in commending our brethren of the Asheville bar for their prompt and efficient action in the matter, we deem it desirable to say that an amendment to the rules has been made and hereto appended, to the effect that all persons who "intend to apply for license shall inform the clerk of the Court of their purpose at least thirty days before the time for the examinations as fixed by the statute, and that a list of these persons shall be forthwith made and kept in the office and open to public inspection for this thirty days.

Again, a form of certificate by attorneys, required to be made to obtain right of examination, has been prepared, which will be sent to each applicant, and which shall be properly signed and filed with the clerk in apt time. The statute pertinent (C. S., 196), provides, as stated, that the applicant shall file with the clerk a certificate of good moral character, signed by two attorneys who practice in this Court. It will be noted that this is not by persons who are merely

qualified, but attorneys who in fact practice before us, and we consider it not amiss to admonish our brethren of the bar that the signing of this certificate is not a formal or perfunctory act, but should be given only from personal knowledge or after painstaking inquiry into the matter. By observing this requirement they can do much to aid the Court in protecting our profession from unworthy members.

Application denied.

The following amendment shall be added to the rules:

3½. As a condition precedent to his right to apply for license, every applicant for license to practice law in this State, either under the Comity Act or by taking the prescribed examination, shall notify the clerk of his intention to become an applicant at least thirty days prior to the day of examination. Immediately upon receipt of such notice, the clerk shall furnish said applicant with blank forms for his certificates, as required by Rules 2 and 3. The names of those who have thus signified their intention of becoming applicants for license to practice law shall be open to inspection in the clerk's office during the thirty-day period prior to the examination.

This notice to the clerk is not in lieu of, but in addition to, the requirements relating to certificates of proficiency and good moral character; and as to these, the time for filing same shall be changed from "not later than noon of Friday preceding the day of examination" to "not later than noon of Tuesday preceding the day of examination."