The defendant Railroad Company excepted to an order of the North Carolina Utilities Commission relative to the rates on pulpwood shipped over defendant's lines, to Plymouth, N.C. and appealed to the Superior Court. From judgment affirming the order of the Utilities Commission, the defendant appealed to the Supreme Court.
The material facts upon which the order appealed from was based may be stated in chronological sequence as follows:
On 11 April, 1938, the Utilities Commission authorized carriers by railroad operating in North Carolina to increase their rates on pulpwood, and 25 April, 1938, entered a supplemental or amended order limiting the increase to 5% over the previous, or "Roanoke Rapids Scale." Thereafter application was made on behalf of the rail carriers, including this defendant, petitioning the Commission for reconsideration *Page 285 
and requesting that an increase of 10% on the pulpwood rate be authorized on intrastate shipments. After full hearing by the Commission the petition was denied, and it was ordered that the "order of April 11, 1938, as amended, shall remain in full force and effect." This last order was dated 12 June, 1939.
On 4 June, 1942, the defendant Atlantic Coast Line Railroad Company filed with the Utilities Commission tariffs containing new and higher rates on pulpwood. Thereupon the Commission ordered that an investigation be had concerning the lawfulness of the rates on pulpwood stated in the schedules, and ordered suspension of the rates and postponement of the effective date of the schedules pending investigation and decision thereon. It was further ordered "that the rates and charges and the regulations and practices thereby sought to be altered shall not be changed by any subsequent tariff or schedule, until this investigation and suspension proceeding has been disposed of or until the period of suspension or any extension thereof has expired, unless authorized by special permission of the Commission."
Thereafter the suspension was continued to 7 January, 1943, and the defendant not being ready to enter upon the investigation, and at the request of the defendant, the operation of the proposed tariff schedules was postponed "until such time as respondents herein are ready to proceed with the investigation."
On 2 August, 1943, and 26 November, 1943, the defendant again filed with the Commission tariffs containing higher rates on pulpwood than those established by the order of 12 June, 1939, according to which the existing rates would expire and the new rates become effective 1 January, 1944.
On 24 January, 1944, the Utilities Commission, finding as a fact that its notice to the defendant to restore the rates on pulpwood to the level provided in the order of 12 June, 1939, had not been complied with, declared that it regarded defendant's action as constituting a refusal to obey an order of the Commission, and thereupon issued notice to the defendant to show cause why the Commission should not institute action to recover the penalty therefor prescribed by G.S., 62-142 (C. S., 1106).
Pursuant to this notice hearing was had 3 February, 1944, and on 15 February, 1944, the Commission entered an order holding that the pulpwood rates contained in defendant's tariff schedules, to the extent they exceeded the maximum level permitted under the outstanding order of 12 June, 1939, were unlawful, and that continued refusal to obey the previously established orders of the Commission rendered defendant liable to an action for the penalty prescribed by the statute. The defendant was directed to correct its published rates for intrastate transportation of pulpwood, so as to bring the statement of such rates into *Page 286 
harmony with the order of 12 June, 1939. The Commission upheld its rule wherein it was prescribed that if vacation or modification of an existing order was sought for the purpose of permitting the filing of rates other than those in effect, it should be by petition, or written notice in triplicate setting out the reasons and conditions relied on as a basis for the changes proposed.
To this order the defendant excepted on the ground that the Utilities Commission was without authority to issue the order for the reason that the tariff was filed in accordance with the statute, G.S., 62-125, and the Commission had not proceeded in accordance with this statute; that the defendant had violated no valid order of the Commission, and the Commission had no authority to order a correction of defendant's tariff, or to declare that refusal to do so rendered defendant liable under G.S., 62-142. Defendant also excepted to the application of the Commission's rule in so far as it prescribed action in addition or contrary to the statute. It was asserted that the enforcement of the order contemplated would deprive the defendant of its property without due process of law in violation of the Federal Constitution.
The defendant's exceptions were overruled, and, upon appeal to the Superior Court, the ruling of the Utilities Commission was in all respects affirmed. The defendant appealed to the Supreme Court, assigning errors in the judgment.
This appeal brings up for consideration the validity of an order of the Utilities Commission, adverse to the defendant Railroad Company, with respect to rates for the transportation intrastate of pulpwood over the lines of the defendant.
The order of the Utilities Commission, which was affirmed by the Superior Court, held that the action of the defendant, under the circumstances, in attempting to effectuate changes in tariff charges on pulpwood in excess of the maximum rate established by the previous orders of the Commission, at a time when investigation as to previously filed tariffs of the same tenor was pending, and the refusal of the defendant, after notice, to correct these rates to conform to the established rates on this commodity, constituted failure to obey a lawful order of the Commission entailing liability to an action for the statutory penalty.
The defendant excepted to the order and to the judgment of the Superior Court in affirmance, on the ground that the statute permitted a carrier at any time to file with the Commission a tariff containing *Page 287 
different and increased rates, regardless of how the previous rate had been determined, and that the power of the Commission with respect thereto was limited to suspending the operations of the new rates pending an investigation of their lawfulness.
The statute referred to, now codified as G.S., 62-125 (Acts 1939, ch. 365), contains the following provisions (omitting words not pertinent to our inquiry): "Whenever there shall be filed with the Utilities Commission any schedule stating an increase in any new individual or joint rate . . . for the transportation of property by a public carrier . . . the Commission is hereby authorized . . . upon its own initiative . . . to enter upon a hearing concerning the lawfulness of such rate . . . and pending such hearing . . . may suspend the operation of such schedule . . . and defer the use of such rate . . . for a period of ninety days . . . but not for longer period in the aggregate than one hundred and eighty days." The succeeding section (G.S., 62-126), originally a part of the same act, follows: "No increase shall be made in any rate . . . the result of which will be an increase, which has been published and filed by any of the transportation companies named in the preceding section, except upon not less than thirty days notice to the Commission and to the public."
It appears that in 1938 the Utilities Commission, after due notice and hearing, had established rates for intrastate shipments of pulpwood to Plymouth which it found to be just and reasonable, and that thereafter upon petition of this defendant and other carriers for reconsideration, the rate so established was ordered "to remain in full force and effect." By virtue of the statute (G.S., 62-123) these rates so established must be deemed the only just and reasonable rates for this commodity over defendant's lines, rendering it unlawful for the defendant to charge a greater amount. G.S., 62-135.
It further appears that after the rate had been duly established the defendant sought in 1942 to increase these rates by filing tariff schedules to that effect, but the Commission by order of postponement deferred use of the new rates pending investigation. In this proceeding, to which defendant was a party, the Commission ordered that the rates previously fixed "shall not be changed by any subsequent tariff or schedule until this investigation and suspension proceeding has been disposed of." To this order there was no exception. Then at the request of defendant the postponement was continued until the investigation into the lawfulness of the proposed rates could be had. While the matter was still pending, the defendant again filed tariff schedules calling for increased rates on pulpwood.
We think the Commission's order, duly entered without objection in a proceeding to which defendant was a party, was binding upon the *Page 288 
defendant, and that it could not thereafter, without proceeding with the investigation it had by its action called for, begin all over again by filing subsequent tariffs of the same tenor with respect to the same commodity. Hence the order of the Commission that the defendant be required to correct its last published tariff so that the rates "sought to be altered shall not be changed by any subsequent tariff or schedule, until this investigation and suspension proceeding has been disposed of," must be upheld. The Utilities Commission is by statute (G.S., 62-11) constituted a court of record with the powers of a court of general jurisdiction as to all matters properly before it. The defendant, however, should be given reasonable time within which to comply with this order before penalty may be invoked.
The defendant contends that the statute (G.S., 62-125), properly interpreted and applied to the facts of this case, should be held to justify its action, and to manifest the invalidity of the order appealed from. But we are unable to agree that on the record here presented this statute authorized the procedure claimed, nor do we concur in an interpretation that would sustain the attitude of the defendant in the face of the previous order of the Commission.
If it should be concluded that, after a rate has been duly established by the Commission, and after new and increased rates shown by subsequent tariffs filed have been suspended pending investigation, the carrier could from time to time continue to file in the record the same or other tariffs carrying increased rates, despite the orders of the Commission to the contrary, while investigation into the reasonableness of the rates was still pending and undisposed of, the public service required of the Utilities Commission in establishing and maintaining just and reasonable freight rates would be impaired.
We think the better view is that pending further investigation into the reasonableness of a rate which has been established by the Commission as the only just and reasonable rate for that commodity, the rate so fixed should not be superseded by a higher rate by the railroad, in violation of an order in the proceeding forbidding it, except after proper determination of the reasonableness of the increase desired.
In further support of the order appealed from it may be noted that according to the Commission's rules of practice and procedure, which were formulated and promulgated under legislative authority (G.S., 62-12), it was the duty of the defendant, if it desired vacation or modification of a previous order, to file "written notice in triplicate of intention to make changes resulting in increases" (Rule 11 [9]). While the power of the Legislature to delegate authority to an administrative agency of the state to prescribe rules and regulations for the due and orderly performance of its public functions is unquestioned (State ex rel. *Page 289 Utilities Com. v. Greyhound Corp., post, 293; Pue v. Hood, 222 N.C. 310,22 S.E.2d 896; Annotation 79 Law Ed., 474 (509), U.S. Supreme Court Reports), this would not authorize the formulation of rules contrary to the provisions of the statute itself. Rules thus prescribed may not be held to control or override those set out in the statute or appearing therein by necessary implication, but under general authority to formulate rules and regulations, the state agency may undoubtedly prescribe by rule the procedure by which a right granted may be exercised. Hence it would seem that the requirement of the statute (G.S., 62-126), that thirty days' notice of an increase in rates be given the Utilities Commission, properly may be implemented by rule of the Commission requiring that the notice be in writing in triplicate. With this rule the defendant did not comply.
Under the facts disclosed by the record the judgment below will be upheld in its affirmance of the order of the Utilities Commission not inconsistent with this opinion.
Affirmed.