IN THE MATTER OF THE PETITION FOR APPLICATION FOR RESTORA-
TION OF LICENSE OF THOMAS S. GARRISON, JR., ASHEVILLE, NORTH
CAROLINA

No. 7910SC59

(Filed 4 December 1979)

1. **Attorneys at Law § 12— reinstatement of license of disbarred attorney—dis-
cretion of State Bar Council—constitutionality of statute**

    The statute giving the State Bar Council the discretion to reinstate the
license to practice law of a disbarred attorney upon satisfactory evidence of
"proper reformation" of the attorney, G.S. 84-32, does not constitute an un-
constitutional delegation of legislative power.

2. **Attorneys at Law § 12— reinstatement of license of disbarred attorney—public
interest**

    Where the trust previously bestowed in an attorney by reason of his of-
fice has once been betrayed, the determination of subsequent fitness to
reassume such a high public office may rightfully hinge upon consideration of
the public interest as well as the existence of minimal requirements required
of a new admittee.

3. *Attorneys at Law § 12— denial of reinstatement of law license—failure to pay
judgments*

    The State Bar Council did not err in the denial of petitioner's application
for reinstatement of his license to practice law where there was evidence that
six judgments were rendered against petitioner as the result of his misapplica-
tion of funds, four judgments which were compromised have been satisfied but
petitioner has made no restitution for two other judgments exceeding $30,000
which he has been unable to compromise, and petitioner renounced funds
which would have helped him to satisfy the judgments, since petitioner's will-
ingness to satisfy only the judgments that could be compromised constituted
evidence of the lack of proper reformation as required by G.S. 84-32.

APPEAL by petitioner from *Bailey, Judge.* Order entered 21
August 1978 in Superior Court, WAKE County. Heard in the
Court of Appeals 25 September 1979.

Petitioner, a disbarred attorney, filed an application with the
Secretary of the North Carolina State Bar Council seeking
reinstatement as an attorney-at-law. A hearing was held by a
Hearing Committee, and the Committee recommended that peti-
tioner be reinstated though it expressed some reservations:

"2. The Hearing Committee feels some concern about
the fact that Applicant has not paid all of the judgments ob-

tained against him as a result of his defalcations, the Bertha Aiken judgment (around $8,000.00 (R p 56)), the Mayda Gill judgment (about $17,000.00 (R p 56)) remaining unpaid, and a portion of the Federal income tax judgment (around $2,000.00 (R p 57)) all remaining unpaid. In addition, in the Mayda B. Gill case, there does not appear to have been any criminal charges brought or disposed of with regard to this defalcation.

3. The Hearing Committee feels, however, that, due to the age of Applicant, if he is ever to have his license reinstated, it should be reinstated at a time when it will be of some use to him rather than to delay reinstatement until the unpaid judgments are paid which will, without question, require a number of years. He has, through commendable effort, rehabilitated himself to a marked degree and has gained the respect of the people in his community for his exemplary conduct in difficult circumstances, even though the circumstances were the result of his own actions."

Upon consideration and reconsideration, the Council denied petitioner's application for reinstatement. Petitioner filed a petition in Superior Court for judicial review. The petition was denied, and petitioner appealed.

*Harold D. Coley, Jr., for the North Carolina State Bar.*

*Long, McClure, Parker, Hunt & Trull, by Robert B. Long, Jr., for petitioner appellant.*

ERWIN, Judge.

[1] Petitioner contends that G.S. 84-32 which provides in pertinent part that "[w]henever any attorney has been deprived of his license, the council, in its discretion, may restore said license upon due notice being given and satisfactory evidence produced of proper reformation of the licentiate before restoration" is an unconstitutional delegation of legislative power, because it gives the North Carolina State Bar Council unbridled discretion in the restoration of licenses. We disagree.

The Legislature, in its infinite wisdom, has endowed the North Carolina State Bar Council with the duty of ascertaining when a wayward attorney has presented such satisfactory

evidence of reformation so as to entitle the attorney to be listed once more on the attorney rolls of our State. G.S. 84-23 and G.S. 84-32. This, the Legislature may do as long as it prescribes a sufficient standard of guidance. *In re Willis*, 288 N.C. 1, 215 S.E. 2d 771 (1975), *appeal dismissed*, 423 U.S. 976, 46 L.Ed. 2d 300, 96 S.Ct. 389 (1975); *Turnpike Authority v. Pine Island*, 265 N.C. 109, 143 S.E. 2d 319 (1965); *State v. Harris*, 216 N.C. 746, 6 S.E. 2d 854 (1940).

The standard set forth in the statute is the production of satisfactory evidence of *proper reformation*. Whether or not an applicant applying for reinstatement as an attorney has presented satisfactory evidence of such reformation is a factual determination lawfully delegated to the Council. *See In re Willis, supra*, and *Foster v. Medical Care Comm.*, 283 N.C. 110, 195 S.E. 2d 517 (1973). We find no unconstitutional delegation of legislative power.

Petitioner further contends that the Superior Court erred in affirming the Council's denial of his application for reinstatement. We disagree.

The term, "proper reformation," is not expressly defined in the statute. However, the State Bar Council has interpreted the term to mean that the applicant must demonstrate

"[b]y clear and convincing evidence that he or she has the moral qualifications, competency and learning in law required for admission to practice law in this State and that the resumption of the practice of law within the State by the petitioner will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest."

Rules and Regulations of the North Carolina State Bar, Article IX, § 25(A)(3), 288 N.C. 767-68 (1975). When viewed in proper context, this interpretation of the requisite showing cannot be said to be clearly erroneous. The reinstatement of an attorney is a matter not to be lightly regarded. As Chief Justice Stacy admonished in *In re Applicants for License*, 191 N.C. 235, 239, 131 S.E. 661, 663 (1926):

"[C]onsider for a moment the duties of a lawyer. He is sought as counselor, and his advice comes home in its ultimate effect to every man's fireside. Vast interests are committed to his

care; he is the recipient of unbounded trust and confidence; he deals with his client's property, his reputation, his life, his all. An attorney at law is a sworn officer of the court, whose chief concern, as such, is to aid in the administration of justice. In addition, he has an unparalleled opportunity to fix the code of ethics and to determine the moral tone of the business life of his community. Other agencies, of course, contribute their part, but in its final analysis, trade is conducted on sound legal advice. Take, for example, a commercial center of high ideals, another of low standards, and there will invariably be found a difference between the bars of the two localities. The legal profession has never failed to make its impress upon the life of the community. It is of supreme importance, therefore, that one who aspires to this high position should be of upright character, and should hold, and deserve to hold, the respect and confidence of the community in which he lives and works. *In re Dillingham*, 188 N.C., p. 165; *In re Applicants for License*, 143 N.C., 1.

'No profession,' says Mr. Robbins in his American Advocacy, 251, 'not even that of the doctor or preacher, is as intimate in its relationship with people as that of the lawyer. To the doctor the patient discloses his physical ailments and symptoms, to the preacher the communicant broaches as a general rule only those things that commend him in the eye of heaven, or those sins of his own for which he is in fear of eternal punishment, but to his lawyer he unburdens his whole life, his business secrets and difficulties, his family relationships and quarrels and the skeletons in his closet. To him he often commits the duty of saving his life, of protecting his good name, of safeguarding his property, or regaining for him his liberty. Under such solemn and sacred responsibilities, the profession feels that it owes to the people who thus extend to its members such unparalleled confidence the duty of maintaining the honor and integrity of that profession on a moral plane higher than that of the merchant, trader or mechanic.' "

[2] Although *In re Applicants for License* dealt with an initial application for admission, it is equally apropos here. Where, as here, the trust previously bestowed in an attorney by reason of his office has once been betrayed, the determination of subse-

quent fitness to reassume such a high office may rightfully hinge upon consideration of the public interest as well as the existence of minimal requirements required of a new admittee. *In re Weaks*, 407 S.W. 2d 408 (1966).

> "Moreover, the court, in determining the present fitness of a petitioner for reinstatement to practice law will, among other matters, such as the making or failure to make restitution, take into consideration the applicant's character and standing prior to disbarment or suspension or resignation, his present mental and moral qualifications, the nature and character of the charge for which he was disbarred or suspended, his conduct subsequent thereto, and the time that has elapsed between the disbarment, suspension, or resignation and the application for reinstatement." (Footnotes omitted.)

*Annot.*, 70 A.L.R. 2d 268, 284 (1960).

[3] In denying petitioner's application, the Council had before it evidence that petitioner had compromised four of the six civil judgments rendered against him but had failed to make restitution for two outstanding judgments against him in excess of $30,000.00. Petitioner also renounced funds which would have enabled him to help satisfy the judgments against him.

Petitioner's willingness to satisfy only the judgments that could be compromised, while failing to satisfy those not the subject of compromise, is evidence of the lack of proper reformation required by the statute. Determination of the satisfaction of the requirement of reformation of character involves an exercise of delicate judgment on the part of those entrusted with the statutory duty. The ultimate determination belonged to the Council, not the Hearing Committee. *See* G.S. 84-23 and G.S. 84-32. Petitioner has failed to prove he has carried his burden.

The judgment entered below is

Affirmed.

Judges VAUGHN and HILL concur.