JOHN D. GRAY, PETITIONER v. ORANGE COUNTY HEALTH DEPARTMENT, RESPONDENT

No. 9310SC27

(Filed 6 June 1995)

1. **Administrative Law and Procedure § 63 (NCI4th)— dismissal of health department employee—petition for judicial review—lack of specificity**

The trial court erred by denying respondent's motion to dismiss petitioner's petition for judicial review of his dismissal as a county health department inspector, since the petition failed to meet the specificity requirements of N.C.G.S. § 150B-46 in that it lacked even a single exception to particular findings of fact or conclusions of law and set forth no basis for alleging that the final decision of dismissal was "arbitrary and capricious," except perhaps the statement that it contradicted the recommended deci-

GRAY v. ORANGE COUNTY HEALTH DEPT.

[119 N.C. App. 62 (1995)]

sions of the administrative law judge and the State Personnel Commission which were advisory only.

**Am Jur 2d, Administrative Law §§ 561, 562, 564.**

2. **Administrative Law and Procedure § 67 (NCI4th)—dismissal of health department employee—reversal of health department director's decision—error by trial court**

The trial court erred in reversing the decision of the county health department director to dismiss petitioner who was a sanitation inspector where the petition for judicial review alleged no objection to any particular finding of fact in the Final Decision, and each of those findings was therefore binding on the superior court; the trial court's outright rejection of respondent's director's findings and conclusions, followed by adoption instead of the findings of the administrative law judge and the State Personnel Commission, therefore reflected improper application of the "whole record test" and erroneous substitution of the court's judgment for that of the agency as contained in the Final Decision; and proper application of the whole record test supported the conclusion that "just cause" existed to discharge petitioner from employment on grounds of unacceptable personal conduct in making romantic overtures and inappropriate sexually suggestive comments to regulated parties.

**Am Jur 2d, Administrative Law §§ 417, 636, 642.**

Judge GREENE concurring in part.

Appeal by respondent from order entered 1 October 1992 by Judge Robert L. Farmer in Wake County Superior Court. Heard in the Court of Appeals 18 November 1993.

*Crisp, Davis, Page, Currin & Nichols, by M. Jackson Nichols and Elizabeth T. Dierdorf, for petitioner-appellee.*

*Coleman, Gledhill & Hargrave, by Geoffrey E. Gledhill, for respondent-appellant.*

JOHN, Judge.

Respondent-appellant Orange County Health Department (the Department) appeals an order of the superior court reversing the termination from employment of petitioner-appellee John D. Gray

(Gray). In its ruling, the court also ordered Gray reinstated to his former position and awarded him $5,047.33 in costs and $25,000.00 in attorney fees. Under the circumstances of this case, we believe the trial court erred.

Pertinent factual and procedural information is as follows: On 5 February 1990, Orange County Health Director Daniel B. Reimer (the Director, Reimer) suspended Gray with pay from the position of Registered Sanitarian pending investigation of several complaints. On 22 March 1990, Gray sought to contest his suspension by filing a Petition for Hearing in the Office of Administrative Hearings (OAH) pursuant to N.C. Gen. Stat. § 126-35 (1993) and Chapter 150B of our General Statutes (the Administrative Procedure Act).

Following Reimer's investigation, Gray was discharged from employment with the Department 7 May 1990 on grounds of unacceptable personal conduct. [Pertinent particulars of Gray's alleged conduct are detailed in the Final Decision quoted *infra*.] Gray thereafter filed a second OAH Petition 20 June 1990, claiming *inter alia* his dismissal was not grounded upon "just cause" and thus violated the State Personnel Act. Consolidation of the two petitions was subsequently allowed.

A four-day hearing on Gray's petitions commenced 16 April 1991, with Administrative Law Judge Peter J. Sarda (ALJ Sarda) issuing his Proposed Decision 12 September 1991. Sarda ruled the Department had failed to establish "just cause" for Gray's dismissal under G.S. § 126-35 and ordered his reinstatement. On 14 February 1992, the State Personnel Commission (SPC) issued its "Decision and Order" in the matter, expressly adopting as its own the findings of fact and conclusions of law reached by ALJ Sarda.

Pursuant to N.C. Gen. Stat. §§ 130A-41(b)(12) (1992) and 126-37 (1993), Director Reimer entered his Final Decision in this matter on 13 March 1992, pertinent portions of which read as follows:

I. FINDINGS OF FACT

A. **Complaint of Lynn Rollins**

1. On June 28, 1988, Mr. John Gray met with Ms. Lynn Rollins and conducted an initial inspection of the kitchen facility in which Ms. Rollins planned to conduct a catering business.

. . . .

3. At this June 2[8], 1988 meeting, Mr. Gray suggested to Ms. Rollins that she go with him to the beach in a private airplane. Mr. Gray stated to Ms. Rollins that she would look great in a bathing suit. Mr. Gray also asked Ms. Rollins out to dinner. Mr. Gray seemed to be preoccupied with establishing a personal relationship with Ms. Rollins rather than dealing with her questions about establishing a catering operation.

4. Carol Layh . . . heard Mr. Gray invite Ms. Rollins out to dinner.

5. In Ms. Rollins' opinion and in Ms. Layh's opinion, Mr. Gray was "coming on" to Ms. Rollins.

. . . .

8. In May of 1989, the Health Department received a complaint from another Orange County regulated caterer that Ms. Rollins was operating her catering business from her home without a permit. This complaint was verified by Mr. Gray who instructed Ms. Rollins that she would have to stop catering in Orange County until she obtained the necessary permit.

. . . .

10. Ms. Rollins ceased doing catering work from her home and immediately thereafter called several restaurants and located three that were willing to share the use of their facilities. Ms. Rollins then called Mr. Gray and tried to set an appointment with him to inspect the three restaurants she had lined up. Mr. Gray told her that she was moving too fast and that her proposed arrangements would not be possible.

. . . .

12. Mr. Gray also told Ms. Rollins at this time that two regulated restaurant businesses could not operate out of the same kitchen facility.

13. In fact no law or regulation prohibited multiple use of one kitchen facility and the Health Department did not have a policy forbidding this practice.

14. As an alternative to sharing kitchen space, Ms. Rollins informed Mr. Gray that she had a small cottage on her property that she would be willing to renovate to use as a kitchen.

15. Without visiting Ms. Rollins' cottage, Mr. Gray informed her that he was sure such a proposal would not work and that he just could not conceive that it would work out.

16. Because of the lack of cooperation Ms. Rollins was receiving from Mr. Gray, . . . [she] called Mr. [Tony] Laws [Mr. Gray's supervisor].

17. Mr. Laws agreed to meet with Ms. Rollins at her home. During this visit he looked at the proposed cottage and felt that it could, with improvements, provide an acceptable facility for a catering operation.

18. It was during this visit that Ms. Rollins related her belief to Mr. Laws that Mr. Gray was not assisting her because she had previously rejected his advances.

19. . . . Ms. Rollins . . . was unwilling to [speak to Mr. Reimer about her situation and the conduct of Mr. Gray] . . . as she did not want to cause herself any unnecessary trouble while she was a regulated party subject to the oversight of Mr. Gray.

. . . .

21. On June 20, 1989, Mr. Laws, Mr. Jack Knight (District Sanitarian for the State), and Mr. Gray inspected the cottage facility and the kitchen facility located at Beaugart's restaurant as possible kitchen facilities for Ms. Rollins to use for her catering business. Both facilities were found acceptable by all three men, and a permit was issued to Ms. Rollins . . . .

22. At some later point, Ms. Rollins decided to operate her catering business in Durham [as opposed to Orange] County, North Carolina . . . [because] she did not want to operate in the county in which Mr. Gray worked.

### B. Complaint of Hillary Ensminger

23. On June 21, 1989, Mr. Gray inspected the kitchen facility leased by Jeff and Hillary Ensminger . . . and issued a permit to them for the operation there of their catering business, the Wandering Feast.

. . . .

25. On June 27, 1989, Mr. Gray took a water sample from the kitchen facility which, upon examination by the State Health Lab, indicated the presence of fecal coliform.

26. On July 10, 1989, Mr. Gray took a second water sample which . . . again indicated the presence of fecal coliform.

27. During this visit by Mr. Gray on July 10, 1989, Mrs. Ensminger told Mr. Gray that she would need to confer with her husband about the problem with the water and its effect on their business. As she prepared to call him on the telephone, Mr. Gray remarked, "Well, we can see who's in authority in this relationship," or words to that effect. Mr. Gray then said, "Well, we can see who's on top in this relationship," or words to that effect. These two statements were then followed by Mr. Gray making a sexually related remark using the word "sex" or the phrase "sexual relationship." Mr. Gray then inquired of M[r]s. Ensminger how often she and her husband engaged in sexual relations.

28. These remarks made by Mr. Gray to Mrs. Ensminger were heard by John Wilson, then an employee of the Wandering Feast.

29. Mrs. Ensminger did not react to these comments at this time as she was shocked and because she had been raised to respect and trust persons in positions of authority.

30. Mrs. Ensminger did not bring these comments to the attention of her husband as she did not want to bring any trouble to their business and because the whole episode was unseemly to her.

31. But for Mr. Gray's position of authority over her business she would not have tolerated such conduct. She was intimidated by Mr. Gray because of his position as a health inspector.

. . . .

35. On October 10, 1989, after additional water samples showed the presence of fecal coliform, Mr. Gray . . . suspended the [Ensmingers'] restaurant permit.

36. On the same day, October 10, 1989, Mr. Gray also conducted the fourth quarter inspection of the premises and recorded a score of 88, or "B" grade.

37. The points deducted for the contaminated water supply from the inspection of the kitchen . . . were the difference between an "A" grade and a "B" grade.

38. Mr. Gray had the discretion to conduct this fourth quarter inspection at any time before December 31, 1989.

39. The Ensmingers did not receive an adequate explanation from Mr. Gray or from any representative of the Health Department justifying Mr. Gray's decision to inspect their facility while their restaurant permit was suspended and their business closed.

40. On December 10[,] 19[89], the suspension was lifted, but no inspection was performed by Mr. Gray. This resulted in the "B" grade . . . remain[ing] in effect. . . . As testified to by Mr. Ensminger, the receipt of anything lower than an "A" grade is very damaging to the business of a caterer and a restauranteur [sic].

41. Some time after December 10, 1989, Mr. Ensminger met with Mr. Laws and complained of several items relevant to Mr. Gray's conduct, including: 1) the fact that an inspection was conducted by Mr. Gray while their operating permit was suspended, and 2) the fact that he did not like Mr. Gray being around his wife . . . .

. . . .

C. The Investigatory Process

. . . .

47. . . . [Later,] Mr. Laws contacted Ms. Rollins and asked her if she would be willing to speak with Mr. Reimer concerning Mr. Gray's conduct. She agreed to do so, as she was no longer operating as a regulated party in Orange County.

. . . .

II. CONCLUSIONS OF LAW

. . . .

2. The allegations made by Ms. Rollins and Mrs. Ensminger to the Health Department concerning the behavior of Mr. Gray while acting in his professional capacity as an inspector are credible and were corroborated by independent witnesses.

3. Such conduct on the part of Mr. Gray constitutes unacceptable personal conduct, which is defined by State Personnel Regulation 01J .0604 of Title 25 N.C.A.C. and Section 4.2 of the Orange County Ordinance as that conduct for which, ". . . no reasonable person could, or should, expect to receive prior warn-

ings." Unacceptable personal conduct constitutes just cause for disciplinary action under the State Personnel Act, § 126-35.

4. The evidence presented on behalf of the Health Department meets the sufficiency standards for just cause to dismiss an employee.

5. Specifically, Respondent has shown that Petitioner was dismissed on the grounds of unacceptable personal conduct in that he was (1) flirtatious with Ms. Rollins, that he asked her out to dinner, that he invited her to go to the beach with him, and that he told her how great she would look in a bathing suit (the sum total of which was characterized by Ms. Rollins and Mrs. Layh as "coming on" to her), and (2) for making inappropriate, sexually oriented remarks to Mrs. Ensminger. Both Ms. Rollins and Mrs. Ensminger were regulated parties of the Health Department at such time.

After setting out in detail six reasons why he declined to accept the recommended decision of the ALJ and the SPC, Reimer affirmed the termination of Gray.

Gray thereafter filed a Petition for Judicial Review "in accordance with G.S. 150B, Article 4, and G.S. 126-37," requesting that the superior court reverse the Director's Final Decision and affirm the Recommended Decision and Order of ALJ Sarda as adopted by the SPC with slight modification. He further sought reinstatement to his previous position, or one comparable, as well as costs and attorney fees.

On 10 April 1992, the Department moved to dismiss Gray's petition "pursuant to Rule 12(b)(6) . . . , N.C. Gen. Stat. § 126-37 and N.C. Gen. Stat. § 130A-41," and for a change of venue pursuant to N.C.R. Civ. P. 12(b)(3) (1990).

By order entered 1 October 1992, the superior court reversed Director Reimer's Final Decision, stating in relevant part:

1. Respondent's motion to dismiss and for change of venue is denied.

2. The Court finds that the Orange County Health Director abused his discretion and was arbitrary and capricious in his rejection of the Recommended Decision of the State Personnel Commission.

3. The Court hereby adopts and affirms the Findings of Fact of the State Personnel Commission as its own.

4. The Court hereby adopts and affirms the Conclusions of Law and Recommended Decision of the State Personnel Commission and orders Petitioner's reinstatement and further orders Respondent to pay back pay, benefits, attorney's fees and costs.

5. The Court, having reviewed the affidavit of time and costs finds the costs of $5,047.33 and attorney fees of $25,000.00 are reasonable.

The Department raises seventeen (17) assignments of error to the trial court's ruling, but in its appellate brief has condensed these into five (5) arguments.

I.

**[1]** The Department first contends the trial court erred by denying its motion to dismiss Gray's petition for judicial review, alleging the petition failed to meet the specificity requirements of N.C. Gen. Stat. § 150B-46 (1991). We find this contention valid.

Under N.C. Gen. Stat. § 150B-43 (1991):

Any person who is aggrieved by the final decision in a contested case, and who has exhausted all administrative remedies made available to him by statute or agency rule, is entitled to judicial review of the decision under this Article [Article 4 of Chapter 150B] . . . .

A party seeking judicial review must file a petition in Wake County Superior Court or the superior court of the county wherein the party resides, see N.C. Gen. Stat. § 150B-45 (1991), stating "explicitly . . . what exceptions are taken to the decision or procedure and what relief the petitioner seeks." G.S. § 150B-46. "Explicit" is defined in this context as "characterized by full clear expression: being without vagueness or ambiguity: leaving nothing implied." *Vann v. North Carolina State Bar*, 79 N.C. App. 173, 173-74, 339 S.E.2d 97, 98 (1986) (quoting Webster's Third New International Dictionary 801 (1968)).

In *Vann*, this Court upheld the trial court's dismissal of a petition for judicial review on grounds it failed to meet the requirements of G.S. § 150B-46. More particularly, we stated:

*In his petition, Vann did not except to any finding of fact or conclusions of law, but made only generalized complaints* as to certain procedural aspects of the hearing before respondent. . . . [W]e . . . conclude that Vann's petition was not sufficiently explicit to allow effective judicial review of respondent's proceedings.

*Vann,* 79 N.C. App. at 174, 339 S.E.2d at 98 (emphasis added); *but cf. Save Our Rivers, Inc. v. Town of Highlands,* 113 N.C. App. 716, 723-24, 440 S.E.2d 334, 339, *disc. review allowed,* 336 N.C. 609, 447 S.E.2d 402 (1994); *O.S. Steel Erectors v. Brooks, Com'r of Labor,* 84 N.C. App. 630, 632, 353 S.E.2d 869, 871-72 (1987). Further, although Vann contended in his appellate brief that certain "explicit" allegations had in fact been included in the petition, we declined to accept "[s]uch generalized statements" as adequate to withstand the motion to dismiss. *Vann,* 79 N.C. App. at 174, 339 S.E.2d at 98.

A review of Gray's 13 March 1992 petition reveals it likewise was not "sufficiently explicit to [have] allow[ed] effective judicial review." *Id.* The sole portions touching upon Reimer's Final Decision are as follows:

8. Respondent has indicated that it will provide a final decision on the Recommended Decision by March 13, 1992 but Petitioner has not received this decision.

9. Petitioner anticipates that the Final Decision will be to deny reinstatement to Petitioner. If the Recommended Decision is to reinstate Petitioner, then this Petition will be dismissed.

10. Petitioner reserves the right to amend this Petition upon receipt of the Final Decision and address any issues included therein.

. . . .

EXCEPTIONS TO THE DECISION OF RESPONDENT

9. Upon information and belief, Petitioner believes that Respondent will deny him reinstatement and the award of attorney fees. Petitioner excepts to this Decision as being contrary to the Recommended Decision of the Administrative Law Judge and the State Personnel Commission . . . . Such Decision was arbitrary and capricious.

10. Petitioner shows unto the Court that his Petition meets all the requirements under G.S. 150B, Article 4 . . . .

Significantly, the petition lacked even a single exception to particular findings of fact or conclusions of law. Instead, it baldly asserted only that the Department's decision was "contrary to the Recommended Decision of the Administrative Law Judge and the State Personnel Commission." In addition, Gray set forth no basis in his petition for alleging that the Final Decision was "arbitrary and capricious," save perhaps the statement that it contradicted the recommended decisions.

Gray maintains, however, that he met the requirements of G.S. § 150B-46 by excepting broadly to "any [d]ecision of Reimer that was [c]ontrary to the Recommended Decision . . . ." Indeed, such a conclusion is mandated, he continues, by the rule that we are to construe liberally statutes allowing for judicial review in order to "preserve and effectuate that right." *See, e.g., James v. Board of Education,* 15 N.C. App. 531, 533, 190 S.E.2d 224, 226 ("primary purpose of the statute is to confer the right of review") (citation omitted), *disc. review allowed,* 282 N.C. 152, 191 S.E.2d 601, *appeal withdrawn,* 282 N.C. 672, 194 S.E.2d 151 (1972). Although Gray accurately states the general rule, it may not operate to salvage a petition which utterly disregards the statutory specificity requirements.

In the case *sub judice,* the Director's decision consisted of thirty (30) pages, containing eighty-one (81) findings of fact, twelve (12) conclusions of law, and six (6) carefully explained "specific reasons the Orange County Health Director declines to adopt the recommended decision of the Administrative Law Judge and the State Personnel Commission's adoption [thereof]." Particularly in light of the extremely detailed and thorough nature of Reimer's decision, it is difficult to imagine how Gray's petition could be less specific or explicit. Notably, Gray *expressly reserved the right to amend his petition,* signifying an awareness of the necessity to be "explicit." However, the record reflects no attempt at amendment.

Gray also points out that his petition does include specific exceptions to certain procedural violations (and resultant determinations) made by the ALJ and the SPC in their Recommended Decisions. However, G.S. § 150B-43 allows for judicial review of a *final* agency decision which in the case *sub judice* was that issued on 13 March 1992 by Reimer as the "local appointing authority." *See* G.S. § 130A-41. No significance therefore may be attached to exceptions, however "explicit," directed at recommended decisions of the ALJ and the SPC which were merely *advisory* to the appointing authority, *see*

§ 126-37(a); *see also* N.C. Gen. Stat. § 126-37(b1) (Cum. Supp. 1994), and which in any event were favorable to petitioner. *See, e.g., Prevette v. Bullis*, 12 N.C. App. 552, 553, 183 S.E.2d 810, 811 (1971).

Accordingly, as Gray's petition for judicial review "was not sufficiently explicit to permit effective judicial review" of the proceedings, *Vann*, 79 N.C. App. at 174, 339 S.E.2d at 98, we hold the Department's motion to dismiss should have been allowed.

## II.

**[2]** By its next three arguments, the Department contends that even assuming *arguendo* the trial court properly undertook to consider Gray's petition, reversal of the Director's Final Decision was nonetheless error. We find the Department's reasoning persuasive, and believe it provides an additional basis for our decision to reverse the trial court's order.

Examination by this Court of a trial court's order reviewing an agency decision focuses upon determining whether that court properly applied the applicable review standards articulated in N.C. Gen. Stat. § 150B-51 (1991). *Walker v. N.C. Dept. of Human Resources*, 100 N.C. App. 498, 502, 397 S.E.2d 350, 353 (1990) (citation omitted), *disc. review denied*, 328 N.C. 98, 402 S.E.2d 430 (1991). "The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 675-76, 443 S.E.2d 114, 118-19 (1994) (citations omitted). Moreover, we are "not required to accord any particular deference to the superior court's findings and conclusions concerning the [Final Decision]." *Watson v. N.C. Real Estate Comm.*, 87 N.C. App. 637, 640, 362 S.E.2d 294, 296 (1987) (citation omitted), *disc. review denied*, 321 N.C. 746, 365 S.E.2d 296 (1988).

The Department correctly observes that the "whole record test" is the proper standard of review for the superior court when considering whether an agency decision is "arbitrary and capricious" (as alleged by Gray and found by the trial court herein). *See, e.g., Brooks, Com'r of Labor v. Rebarco, Inc.*, 91 N.C. App. 459, 463, 372 S.E.2d 342, 344 (1988) (citation omitted); *see also* G.S. § 150B-51. Application of the whole record test generally necessitates examination by the court of all competent evidence comprising the "whole record" so as to ascertain if substantial evidence therein supports the findings and

conclusions of the administrative agency. *See, e.g., Henderson v. N.C. Dept. of Human Resources,* 91 N.C. App. 527, 530, 372 S.E.2d 887, 889 (1988) (citation omitted).

Although the court's order did not state the standard or scope of review utilized, *see Utilities Comm. v. Oil Co.,* 302 N.C. 14, 20-22, 273 S.E.2d 232, 236 (1981), we consider solely for purposes of this opinion that the court's language to the effect that "the Orange County Health Director abused his discretion and was arbitrary and capricious in his rejection of the Recommended Decision" indicates the court applied the whole record test and thus satisfied the first prong of the requisite twofold task. *See Amanini,* 114 N.C. App. at 675-76, 443 S.E.2d at 118-19 (citation omitted).

With respect to the second prong mandating *proper application* of the whole record test, *id.,* however, we believe the trial court's undertaking was deficient in several respects. First, we reiterate that Gray's petition for judicial review contained no exceptions or objections to *any* specific finding of fact set out in the Final Decision. On a previous occasion this Court has observed:

> [R]espondent did not object . . . to the . . . findings of fact at the superior court level. *The findings of fact were binding, therefore, at that appellate level, and are binding for purposes of our [Court of Appeals'] review.*
>
> . . . .
>
> The whole record test generally requires examination of the entire record, including the evidence which detracts from the agency's decision. Neither party here, however, called the court's attention to any dispute in the evidence by excepting to or assigning error to any of the findings of fact adopted by the [agency]. When an agency finds facts, it is required to resolve conflicting evidence. Since neither party objected to the findings adopted by the [agency], the superior court could reasonably assume that the [agency] had properly resolved these conflicts, and that the findings in each case accurately and properly reflected the whole record.

*Walker,* 100 N.C. App. at 502-03, 397 S.E.2d at 354 (emphasis added) (citations omitted). Accordingly, as Gray's petition alleged no objection to any particular finding of fact in the Final Decision, each of those findings was binding on the superior court. *See id.* at 502, 397 S.E.2d at 354 (citation omitted).

Moreover, the uncontested findings in the Final Decision constituted the "whole record" for review by the court, *id.* at 503, 397 S.E.2d at 354, which was constrained simply to "examine the conclusions of the [agency] and determine whether they were supported by substantial evidence in the record, as reflected by the findings of fact." *Id.* Stated otherwise, given Gray's failure to object to any findings of fact, the court in applying the whole record test was obligated to accept Reimer's findings as admitted and thereafter determine whether they supported the conclusions reached in the Final Decision. The court's outright rejection of the Director's findings and conclusions, followed by adoption instead of the findings of ALJ Sarda and the SPC, therefore reflects improper application of the "whole record test" and erroneous substitution of the court's judgment for that of the agency as contained in the Final Decision. *Crump v. Bd. of Education,* 79 N.C. App. 372, 374, 339 S.E.2d 483, 484 (citation omitted), *disc. review denied,* 317 N.C. 333, 346 S.E.2d 137 (1986).

Further, the court in its order stated simply: "the Orange County Health Director abused his discretion and was arbitrary and capricious in his rejection of the Recommended Decision of the State Personnel Commission." However, proper application of the "whole record test"—*i.e.,* examination of whether the agency's unchallenged findings in the Final Decision (the "whole record," *Walker,* 100 N.C. App. at 503, 397 S.E.2d at 354) support the conclusion that "just cause" existed to discharge Gray from employment on grounds of unacceptable personal conduct—mandates a result different from that reached by the trial court.

Local government employees (including Registered Sanitarians working with county health departments) are subject to the State Personnel Act. As such, they cannot be "discharged, suspended, or demoted for disciplinary reasons, except for just cause." G.S. § 126-35. Our cases have established that "just cause" for dismissal may be grounded upon either "(1) inadequate performance of duties or, (2) personal conduct detrimental to State service." *Leiphart v. N.C. School of the Arts,* 80 N.C. App. 339, 343, 342 S.E.2d 914, 918 (citation omitted), *disc. review denied,* 318 N.C. 507, 349 S.E.2d 862 (1986). It is undisputed that Gray's dismissal was on the basis of unacceptable personal conduct. Our Administrative Code has defined "personal conduct discipline" in this context as "intended to be imposed for those actions for which no reasonable person could, or should, expect to receive prior warnings." *See* N.C. Admin. Code, T25: 01J .0604.

The Final Decision contains findings which, when summarized, indicate that while Gray was acting as a health inspector, he made romantic overtures towards a regulated party (Ms. Rollins), *see* Findings # 3, 4 and 5, and made inappropriate sexually suggestive comments to a second regulated party (Mrs. Ensminger). *See* Findings # 27 and 28. Both women operated small catering companies over which Gray exercised considerable authority. *See, e.g.,* Findings # 1, 10, 12, 13, 14, 15, 17, 19, 23, 30, 31, 36, 37, 38, and 40. The findings further reflect that Ms. Rollins and Mrs. Ensminger felt intimidated by Gray because of the power he possessed to affect their livelihood, *see, e.g.,* Findings # 18, 19, 22, 29, and 30, and suggest that the women's rejection of Gray's advances resulted in their being given inaccurate information and being accorded disparate treatment by Gray. *See, e.g.,* Findings # 10, 12, 13, 15, 17, 18, 21, 38, 39, and 40. Such findings adequately support the conclusion that "taking such liberties with the female clients of the Health Department does constitute improper personal conduct and . . . neither Mr. Gray nor any other person would need to be told in advance that they should not engage in such conduct." Accordingly, the agency's decision to terminate Gray, as reflected in the Final Decision, did not constitute an abuse of discretion and was not arbitrary and capricious. *See, e.g., Joyce v. Winston-Salem State University,* 91 N.C. App. 153, 156, 370 S.E.2d 866, 868 (An agency's determination is arbitrary and capricious "if it clearly evinces a lack of fair and careful consideration or want of impartial, reasoned decisionmaking.") (citation omitted), *disc. review denied,* 323 N.C. 476, 373 S.E.2d 862 (1988).

We therefore reverse the order of the trial court and remand with instructions to reinstate in its entirety the Final Decision of the Department. Our resolution renders discussion of the trial court's award of costs and attorney fees unnecessary.

Reversed and remanded with instructions.

Judge MARTIN, John C. concur.

Judge GREENE concurring in part with separate opinion.

Judge GREENE concurring in part:

I agree with the majority that "Gray's petition for judicial review 'was not sufficiently explicit to permit effective judicial review' of the proceedings" and that the trial court erred in not allowing the

Department's motion to dismiss. For this reason, I would vacate the order of the trial court and remand for reinstatement of the Final Decision of the Department. Because the order of the trial court must be vacated, it is unnecessary to consider, as does the majority, the merits of the appeal to the trial court. I therefore express no opinion on those issues addresses by the majority in Part II of the opinion.