IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-256

Filed 16 May 2023

Columbus County, No. 20 CVS 1273

MAURICE DEVALLE, Petitioner,

v.

NORTH CAROLINA SHERIFFS' EDUCATION AND TRAINING STANDARDS COMMISSION, Respondent.

Appeal by Respondent from order entered 22 November 2021 by Judge James Gregory Bell in Columbus County Superior Court. Heard in the Court of Appeals 2 November 2022.

*The McGuinness Law Firm, by J. Michael McGuinness, for petitioner-appellee.*

*North Carolina Fraternal Order of Police, Amicus Curiae Brief, by Norris A. Adams, II, for petitioner-appellee.*

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Ameshia Cooper Chester, for respondent-appellant.*

MURPHY, Judge.

Where the North Carolina Sheriffs' Education and Training Standards Commission revoked Petitioner's justice officer certification for lack of good moral character based on his conduct in 2016, the Commission could not deny Petitioner's certification indefinitely where the only recent evidence to support the denial was his demeanor on cross examination during the contested-case hearing and Petitioner presented sufficient evidence that he rehabilitated his character. We affirm the trial

court's order on judicial review reversing the Commission's final agency decision and ordering that it issue Petitioner his justice officer certification retroactive to the date of application.

## BACKGROUND

Petitioner Maurice Devalle served with the North Carolina State Highway Patrol for nineteen years. Respondent North Carolina Sheriffs' Education and Training Standards Commission ("the Commission") had certified Mr. Devalle as a justice officer during that time, since November 1998. Prior to April 2017, Mr. Devalle received only one disciplinary action by the Highway Patrol in the form of a written warning.

The Highway Patrol received a tip in November 2016 that Mr. Devalle was at his residence in Wake County while he was supposed to be on duty in Wayne County. The Highway Patrol conducted an internal investigation following the tip. The Highway Patrol learned Mr. Devalle had falsely reported he resided within the mandated-20-mile radius of his duty station in Wayne County, when he in fact lived 44 miles away, in Wake County. On 11 November 2016, Highway Patrol personnel traveled to Mr. Devalle's Wake County home while he was scheduled to be on duty and found him there dressed in plain clothing. Mr. Devalle admitted that, on occasion, he would drive home for lunch and then stay home "for extended periods of time while he was on-duty . . . ." Mr. Devalle acknowledged he knew this conduct violated Highway Patrol Policy.

On 24 April 2017, the Highway Patrol terminated Mr. Devalle's employment and, four days later, notified the Commission of Mr. Devalle's termination and the above conduct. The Commission revoked Mr. Devalle's justice officer certification as a result of the report effective 24 April 2017.[1]

In August 2017, Mr. Devalle began working as a school resource officer for East Columbus County High School and applied that same month once again for justice officer certification with the Commission through the Columbus County Sheriffs' Office. On 29 January 2019,[2] the Commission notified Mr. Devalle that it had reviewed his application for certification and denied his certification indefinitely. The notification indicated to Mr. Devalle his denial was due to him "[n]o longer possessing the good moral character required of all justice officers."[3]

On 20 March 2019, Mr. Devalle filed a request for a contested case hearing in the Office of Administrative Hearings. On 3 December 2019, Mr. Devalle's case came on for hearing before administrative law judge Melissa Owens Lassiter. The Commission only presented evidence of the 2016 conduct that led to Mr. Devalle's termination. Mr. Devalle presented two witnesses at the hearing, the Sheriff of Columbus County and school principal of East Columbus County High School, his

---

[1] Mr. Devalle's termination from the Highway Patrol and initial loss of certification in April 2017 are not at issue in this appeal.

[2] Mr. Devalle remained employed at East Columbus County High during this period.

[3] The Commission also denied Mr. Devalle's certification for the Class B misdemeanor of "Willfully Failing to Discharge Duties," but suspended the denial. This ground is not at issue on appeal.

superiors, where Mr. Devalle was employed as a school resource officer. Both individuals testified in depth to the effect that Mr. Devalle currently had good moral character. The administrative law judge found:

> 68. . . . . [The Commission] failed to present any evidence concerning any activities involving [Mr. Devalle] that took place more recently than 2016. While four witnesses from the [Highway] Patrol testified regarding [Mr. Devalle's] dismissal from the Patrol, none of those witnesses possessed any first-hand knowledge of how [Mr. Devalle] has conducted himself in terms of truthfulness or conformance with policies while [presently] employed as a deputy sheriff in Columbus County. None of those witnesses opined that [Mr. Devalle] lacked good moral character, either generally, or to serve as a deputy sheriff in this State.

(Transcript citations omitted). By proposal for decision filed 3 June 2020, the administrative law judge recommended a conclusion that the evidence at the hearing "rebutted the finding by [the Commission] that Petitioner lacks the good moral character required of a justice officer." The administrative law judge recommended this was a result of the testimony by Mr. Devalle's superiors establishing that Mr. Devalle "has rehabilitated his character since 2017."

By final agency decision signed 6 October 2020,[4] the Commission rejected the administrative law judge's proposal and concluded instead that the evidence before the administrative law judge showed Mr. Devalle "currently does not possess the good

---

[4] Alan Cloninger, Chairman, North Carolina Sheriffs' Education and Training Standards Commission.

moral character required to continue certification as a deputy sheriff." The Commission accepted and found the testimony of Mr. Devalle's present character to be credible and believable. The Commission found, however, that Mr. Devalle lacked candor and truthfulness while testifying on cross examination at the contested case hearing, and therefore concluded he lacked the good moral character required for justice officer certification. The Commission denied Mr. Devalle's certification indefinitely as a result.[5]

On 3 December 2020, Mr. Devalle filed a petition for judicial review of the Commission's final agency decision in Columbus County Superior Court. The Commission filed a motion to dismiss and brief in opposition.

On 22 November 2021, the trial court concluded the record established that Mr. Devalle "*presently* has good moral character to serve as a Deputy Sheriff," and reversed the Commission's final agency decision. The trial court ordered the Commission to grant Mr. Devalle's application for certification effective and retroactive to August 2017. The Commission appeals.

## ANALYSIS

The Commission advances several arguments on appeal challenging the trial court's reversal of its final agency decision. The Commission first argues the trial

---

[5] The Commission denied the certification indefinitely based upon Mr. Devalle's "lack of good moral character." The Commission denied Mr. Devalle's certification for a suspended sanction of five years for the commission of the Class B offense of willful failure to discharge duties.

court erroneously concluded Mr. Devalle's petition for judicial review provided sufficient notice to the Commission of Mr. Devalle's exceptions to its final agency decision. The Commission also argues no grounds support the trial court's reversal of its final agency decision under the provisions of N.C.G.S. § 150B-51(b). We disagree, and affirm the trial court's order.

"Any person who is aggrieved by the final decision in a contested case, and who has exhausted all administrative remedies . . . , is entitled to judicial review of the decision . . . ." N.C.G.S. § 150B-43 (2021). On petition for judicial review from a final administrative agency decision, the trial court sits as an appellate court reviewing the administrative agency. *See Rector v. N.C. Sheriff's Educ. & Training Standards Com.*, 103 N.C. App. 527, 532 (1991) (citing *Thompson v. Wake Cnty. Bd. of Educ.*, 292 N.C. 406, 410 (1977)).

The North Carolina Administrative Procedure Act defines the scope of a Superior Court's review over a final agency decision. *See* N.C.G.S. § 150B-51 (2021). Subsection (b) provides:

> The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

N.C.G.S. § 150B-51(b) (2021).

Errors asserted under subdivisions (1) through (4) of subsection (b) are reviewed *de novo*. N.C.G.S. § 150B-51(c) (2021). "Under the *de novo* standard of review, the trial court considers the matter anew and freely substitutes its own judgment for the agency's." *N.C. Dep't of Env't and Nat. Res. v. Carroll*, 358 N.C. 649, 660 (2004) (quotation marks omitted). In contrast, errors asserted under subdivisions (5) and (6) are reviewed "using the whole record standard of review." N.C.G.S. § 150B-51(c) (2021).

Under the whole record standard of review, the trial court reviews the whole record to ensure "the administrative agency's decision is supported by substantial evidence." *Rector,* 103 N.C. App. at 532. The question before the trial court was whether there was "substantial evidence to support a finding" essential to the agency's determination. *In re Rogers*, 297 N.C. 48, 65-66 (1979). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion and 'is more than a scintilla or a permissible inference.'" *Rector*, 103 N.C. App. at 532 (marks omitted).

"When this Court reviews an appeal from the [S]uperior [C]ourt reversing the decision of an administrative agency, our standard of review is twofold and is limited to determining: (1) whether the [S]uperior [C]ourt applied the appropriate standard of review and, if so, (2) whether the [S]uperior [C]ourt properly applied this standard." *McCrann v. N.C. HHS*, 209 N.C. App. 241, 246, *disc. review denied*, 365 N.C. 198 (2011); *see also Powell v. N.C. Crim. Justice Educ. Training Stds. Comm'n.*, 165 N.C. App. 848, 851 (2004) (citation and marks omitted) ("The appellate court examines the trial court's order regarding an agency decision for error of law.").

### A. Adequacy of Petition for Judicial Review

We first address the Commission's argument that Mr. Devalle's petition for judicial review lacked sufficient notice to the Commission of the specific exceptions Mr. Devalle took to its final agency decision. We conclude the trial court properly denied the Commission's motion to dismiss Mr. Devalle's petition for judicial review on this ground.

Section 150B-46 of the North Carolina Administrative Procedure Act governs the contents of a petition for judicial review over an administrative agency's final decision. N.C.G.S. § 150B-46 (2021). It requires only that "[t]he petition shall explicitly state what exceptions are taken to the decision or procedure and what relief the petitioner seeks." N.C.G.S. § 150B-46 (2021). "'Explicit' is defined in this context

as 'characterized by full clear expression: being without vagueness or ambiguity: leaving nothing implied.'" *Gray v. Orange County Health Dept.*, 119 N.C. App. 62, 70 (quoting *Vann v. N.C. State Bar*, 79 N.C. App. 173, 173-74 (1986)), *disc. review denied*, 341 N.C. 649 (1995).

Mr. Devalle's petition for judicial review in this case took exception to the Commission's finding "that [Mr. Devalle] lacked the good moral character required of every justice officer under 12 NCAC 10B .0303(a)(8)." Mr. Devalle complained that the Commission found the only evidence regarding Mr. Devalle's current moral character to be "credible, honest, and believable," but that the Commission nonetheless concluded Mr. Devalle lacked the requisite moral character. Moreover, Mr. Devalle cited our Supreme Court's decision in *In re Dillingham*, 188 N.C. 162 (1924), and asserted that the sanction of revocation for an indefinite period may continue only "so long as the stated deficiency exists." Mr. Devalle thus excepted "to particular findings of fact, conclusions of law, or procedures." *Kingsgrab v. State Bd. of Barber Examiners*, 236 N.C. App. 564, 570 (2014), *disc. review denied*, 368 N.C. 244 (2015). He then prayed that the trial court "[r]everse the portion of the Final Agency Decision that determined that he continues to lack good moral character," and that the court "[r]einstate [his] justice officer certification[.]" We conclude this filing adequately stated the exceptions Mr. Devalle took to the Commission's final agency decision—i.e., an erroneous finding of Mr. Devalle's present lack of good moral character—and that Mr. Devalle was seeking a reversal thereof. *See James v. Wayne*

*County Board of Education*, 15 N.C. App. 531, 533 (1972) (citing *In re Appeal of Harris*, 273 N.C. 20 (1968)  ("Our Supreme Court has held that the primary purpose of the statute is to confer the right of review and that the statute should be liberally construed to preserve and effectuate that right.").   Moreover, although the Commission was not required to file a response to the petition for judicial review, *see* N.C.G.S. § 150B-46 (emphasis added) ("Other parties to the proceeding *may* file a response to the petition within 30 days of service."), the Commission did file a brief in opposition, which was extensive and which addressed the various exceptions raised in Mr. Devalle's petition for review and argued their inadequacy.  We agree with the trial court that the Commission was "in no way blindsided by a lack of notice or detail," and conclude Mr. Devalle's petition for review was "sufficiently explicit to have allowed effective judicial review." *Gray*, 119 N.C. App. at 71 (brackets omitted).

## B. N.C.G.S. § 150B-51

We next address the Commission's argument the trial court erred in reversing its final agency decision pursuant to N.C.G.S. § 150B-51(b) on the grounds it was unsupported by substantial evidence in view of the entire record and that the Commission erred as a matter of law.  The trial court held that, "[u]nder a correct interpretation of the good moral character rule, [Mr. Devalle] presently has good moral character sufficient for certification as a Deputy Sheriff."  The trial court rendered additional findings of fact to the effect that "[t]he credible and persuasive testimonies by Sheriff Greene and Principal Johnson demonstrated that [Mr.

Devalle] has restored his character so that he now possesses the good moral character required to continue to be certified as a deputy sheriff."

The Commission addresses each of subdivisions N.C.G.S. § 150B-51(b)(3)-(6) and argues that, because the administrative law judge had found Mr. Devalle lacked "candor and sincerity" on cross examination during the contested case hearing, the trial court erred in reversing its final agency decision in that it was not entered upon unlawful procedure (N.C.G.S. § 150B-51(b)(3)) or based upon an error of law (N.C.G.S. § 150B-51(b)(4)), and that it was otherwise supported by substantial evidence (N.C.G.S. § 150B-51(b)(5)) and not arbitrary, capricious, or an abuse of discretion (N.C.G.S. § 150B-51(b)(6)). Mr. Devalle maintains the trial court's order should be affirmed because the Commission failed to present sufficient evidence that his 2016 conduct amounted to "a severe case" of bad moral character warranting indefinite denial, "particularly in light of the evidence of rehabilitation, and that his *present* character is good."

Mr. Devalle maintains the Commission erroneously distorted the administrative law judge's "credibility determinations and [failed] to give deference to her role as the fact-finder and [that] this conduct amounts to arbitrary and capricious decision making on the part of" the Commission.

We agree with the trial court and conclude the Commission did not abide by its own good moral character standard when it denied Mr. Devalle's justice officer certification indefinitely. The Commission's decision was arbitrary and capricious,

and its denial was unsupported by substantial evidence. We affirm the trial court's order reversing the Commission's final agency decision.

Chapter 17E of the North Carolina General Statutes, as well as our Administrative Code, grant the Commission the authority to certify, revoke, suspend, or deny justice officer certifications in North Carolina based on certain qualifications, which the Commission is permitted to establish. *See* N.C.G.S. §§ 17E-1, -4 (2021); *see also* Strong's North Carolina Index 4th § 30 (2021) (citing N.C.G.S. §§ 17E-1, -4 (2021) ("The commission was created to deal with the training and educational needs of sheriffs and deputy sheriffs and has the power, among other things, to establish minimum educational and training standards and to certify persons who have met those standards."). Article 12, Chapter 10B of our Administrative Code provides, in relevant part:

> (b) The [Sheriffs' Education and Training Standards] Commission shall revoke, deny, or suspend the certification of a justice officer when the commission finds that the applicant for certification or the certified officer:
>
> . . . .
>
> (2) fails to meet or maintain any of the employment or certification standards required by 12 NCAC 10B .0300[.]

12 NCAC 10B .0204(b)(2) (2021).

Subdivision .0301 provides that "[e]very Justice Officer employed or certified in North Carolina shall":

be of good moral character as defined in: In re Willis, 288 N.C. 1, 215 S.E.2d 771 (1975), appeal dismissed 423 U.S. 976 (1975); State v. Harris, 216 N.C. 746, 6 S.E.2d 854 (1940); In re Legg, 325 N.C. 658, 386 S.E.2d 174 (1989); In re Applicants for License, 143 N.C. 1, 55 S.E. 635 (1906); In re Dillingham, 188 N.C. 162, 124 S.E. 130 (1924); State v. Benbow, 309 N.C. 538, 308 S.E.2d 647 (1983); and later court decisions that cite these cases as authority[.]

12 NCAC 10B .0301(a)(9) (2021). Accordingly, our State's caselaw defines the concept of good moral character. *See* 12 NCAC 10B .0301(a)(9).

The requirement that an applicant maintain good moral character means

something more than the absence of bad character. It is the good name which the applicant has acquired, or should have acquired, through association with his fellows. It means that he must have conducted himself as a man of upright character ordinarily would, should or does. Such character expresses itself, not in negatives nor in following the line of least resistance, but quite often in the will to do the unpleasant thing, if it is right, and the resolve not to do the pleasant thing, if it is wrong.

*In re Rogers*, 297 N.C. at 58 (quoting *In re Applicants for License*, 191 N.C. 235 (1926)). "Character thus encompasses both a person's past behavior and the opinion of members of his community arising from it." *Id.* Further, "whether a person is of good moral character is seldom subject to proof by reference to one or two incidents." *Id.* "[W]hen one seeks to establish restoration of a character which has been deservedly forfeited, the question becomes essentially one 'of time and growth.'" *In re Willis*, 288 N.C. 1, 13, *appeal dismissed*, 423 U.S. 976 (1975) (quoting *In re Dillingham*, 188 N.C. 162 (1924)).

While vague, the "good moral character" standard is not "an unconstitutional standard." *Id*. at 11. "The right to establish such qualifications rests in the police power—a power by virtue of which a State is authorized to enact laws to preserve the public safety, maintain the public peace and order, and preserve and promote the public health and public morals." *In re Applicants for License*, 143 N.C. 1, 5 (1906). Nonetheless, "[s]uch a vague qualification, which is easily adapted to fit personal views and predilections, can be a dangerous instrument for arbitrary and discriminatory denial . . . ." *Konigsberg v. State*, 353 U.S. 252, 263 (1957).

In 2011, the Commission, in a different case, issued a final agency decision in which it summarized its operating framework for determinations of lack of good moral character and the appropriate corresponding sanctions. *See Royall v. N.C. Sheriffs' Educ. And Training Standards Comm'n.*, Final Agency Decision, 09 DOJ 5859 (5 January 2011). The conduct at issue in *Royall* involved the petitioner releasing to the public sensitive information he obtained about ongoing investigations through his service with the Yadkin County Sheriffs' Office on certain social media websites. The administrative law judge who heard the evidence in the contested case hearing recommended a finding of a lack of good moral character by the petitioner and, as a result, recommended his certification be revoked for four months.

Despite the administrative law judge's recommendations, the Commission concluded there was no factual or legal basis to support a finding the petitioner

presently lacked the requisite good moral character to warrant his revocation. The Commission explained:

> 6.      While having good moral character is an ideal objective for everyone to enjoy, the lack of consistent and clear meaning of that term within the [Commission's] rule, and the lack of clear enforcement standards or criteria for application of the rule, renders enforcement actions problematic and difficult.
>
> 7.      Because of these concerns about the flexibility and vagueness of the good moral character rule, any suspension or revocation of an officer's law enforcement certification based on an allegation of a lack of good moral character *should be reserved for clear and severe cases of misconduct*.
>
> 8.      Generally, isolated instances of conduct are insufficient to properly conclude that someone lacks good moral character. . . . . The incident alleged in this case is insufficient to rise to the required level of proof to establish that Petitioner Royall lacks good moral character. Under *In Re Rogers*, a single instance of conduct amounting to poor judgment, especially where there is no malice or bad faith, would not ordinarily rise to the high level required to reflect a lack of good moral character.
>
> . . . .
>
> 11.      The totality of the facts and circumstances surrounding Petitioner Royall's conduct, in light of his exemplary history of good moral character and professionalism in law enforcement, does not warrant any finding that Petitioner Royall lacks good moral character. The substantial evidence of Petitioner's good moral character is clear and compelling. Sheriff Jack Henderson's description of Petitioner Royall is very telling: "He's the kind of guy, if he's cutting a watermelon, he'll give you the best piece." Therefore, the evidence demonstrates that there is no proper basis for revocation or suspension of Petitioner's law enforcement certification.

. . . .

13. The totality of the facts and circumstances surrounding Petitioner Royall's conduct, in light of his otherwise exemplary history of good moral character and professionalism in law enforcement, do not warrant or justify revoking or suspending Petitioner's law enforcement certification. There has been no violation of [the Commission's] good moral character rule.

*Royall v. N.C. Sheriffs' Educ. And Training Standards Comm'n.*, Final Agency Decision, 09 DOJ 5859 (5 January 2011) (emphasis supplied) (citations omitted). It appears the Commission viewed the petitioner's social media activity and postings in *Royall* to constitute "a single instance of conduct."

Here, as the trial court noted, instead of investigating Mr. Devalle's current moral character, the Commission relied solely on Mr. Devalle's conduct in 2016 which led to his termination of employment from the Highway Patrol.

The Commission characterized the testimony concerning Mr. Devalle's present moral character as follows:

21. Despite knowing that [Mr. Devalle] had been working as a deputy sheriff for two and a half years, [the Commission's Probable Cause Committee] did not interview the Columbus County Sheriff or the school principal for whom [Mr. Devalle] served as a school resource officer since August 2017. [The Commission's Probable Cause Committee] had no knowledge of what Mr. Devalle did while working as a school resource officer or how he discharged his duties as a school resource officer.

. . . .

54. At hearing, [Mr. Devalle] attempted to justify his working from home while on duty by stating that a "very, very small percentage'" of his job duties involved being on patrol. However, [Mr. Devalle] completed weekly reports of daily activity claiming approximately 40% of his time was spent on patrol in Wayne County.

55. The transcripts of [Mr. Devalle's] statements to the Patrol's Internal Affairs on [15 November] 2016, [18 November] 2016, and [27 March] 2017 corroborate [Mr. Devalle's] above cited admissions. They also provide substantial statements of [Mr. Devalle] made closer in time to the events in question, shedding light on facts that [Mr. Devalle] allegedly no longer recalls.

. . . .

69. Steadman Jody Greene is the Sheriff of Columbus County, Whiteville, North Carolina. [Mr. Devalle] works for Sheriff Greene as a deputy in the capacity of the school resource officer. ln this capacity, [Mr. Devalle] is armed with both lethal and non-lethal weapons. [Mr. Devalle] serves at the pleasure of the Sheriff. At the time of hearing, Sheriff Greene had just been released from the hospital and voluntarily came to testify that [Mr. Devalle] does a fine job for him and how important [Mr. Devalle] is to his agency.

70. When Sheriff Greene hired [Mr. Devalle], he was aware that [Mr. Devalle] had been dismissed from the [Highway] Patrol. [Mr. Devalle] had told him. Sheriff Greene is satisfied that [Mr. Devalle] has good moral character. Given the importance of the school resource officer, Greene must place someone in that position upon which he has a special trust and confidence. Sheriff Green has that special trust and confidence in [Mr. Devalle]. He hired [Mr. Devalle] based upon the principal, school board members, parents and students all recommending him and not based upon the past. Sheriff Greene is satisfied that [Mr. Devalle] had performed his duties "above and beyond." If

[Mr. Devalle] was unable to serve as a deputy, it would negatively impact Greene's force.

71. Based on [Mr. Devalle's] service as a deputy sheriff, Sheriff Greene has no hesitation as to [his] truthfulness or ability to tell the truth.

72. Jeremiah Johnson is the principal at East Columbus High School in Lake Waccamaw, North Carolina. Johnson knows [Mr. Devalle] in two capacities: as the school resource officer at East Columbus High School and as an assistant football coach and track coach at that school. [Mr. Devalle] has served, and continues to serve, in those capacities since 2017. Johnson has had the opportunity to watch [Mr. Devalle] perform those duties "every day" that school is in session. Johnson described [Mr. Devalle], in performing his duties as a school resource officer, as "dedicated to the school, dedicated to the students, dedicated to the staff. He comes to school - comes to work every day, is there to serve and protect. He's part of my administrative team. He's almost my right-hand man."

73. When asked whether he had had an opportunity to form an opinion as to [Mr. Devalle's] character, Johnson said, "He is an awesome person. He is an awesome man. And I'm not just saying that for me, I'm saying that for my kids at my school." When asked whether [Mr. Devalle] had ever committed any act that would cause Johnson to doubt [his] capacity to be truthful, Johnson answered, "No."

74. Mr. Johnson has no doubt, based on what he's observed from [Mr. Devalle], that [Mr. Devalle] does not lack the character necessary to serve as a school resource officer at Johnson's high school. Johnson would not have permitted [Mr. Devalle] to serve as an assistant football coach and track coach, in addition to serving as a school resource officer, if he had any doubts about [Mr. Devalle's] character.

75. Mr. Johnson opined that if [Mr. Devalle] was no longer able to serve East Columbus as a school resource officer,

the lack of [Mr. Devalle's] presence would make the school less safe.

76. Johnson also spoke of the strong professional bond that exists between himself as principal and [Mr. Devalle] as the school resource officer. Johnson thinks that [Mr. Devalle] is the best school resource officer he has ever worked with and as a school administrator, Johnson has trained many SROs. He opined that interaction with the students would suffer tremendously if [Mr. Devalle] was not at East Columbus High. "These kids, they look up to him." Johnson explained how [Mr. Devalle] has helped other students such as buying shoes for kids, bought lunch for kids, and given them food. . . .

. . . .

79. Neither [the Commission's Probable Cause Committee] nor [the Commission] presented any evidence at hearing regarding [Mr. Devalle's] performance of his duties as a Columbus County deputy sheriff. [The Commission] failed to present any evidence concerning any activities involving [Mr. Devalle] that took place more recently than 2016. While four witnesses from the Patrol testified regarding [Mr. Devalle's] dismissal from the Patrol, none of those witnesses possessed any first-hand knowledge of how [Mr. Devalle] has conducted himself in terms of truthfulness or conformance with policies while employed as a deputy sheriff in Columbus County. None of those witnesses opined that [Mr. Devalle] lacked good moral character, either generally, or to serve as a deputy sheriff in this State.

. . . .

81. During his case in chief, [Mr. Devalle] presented significant evidence demonstrating that [Mr. Devalle] has rehabilitated and rebuilt his career since 2016 and 2017 while working as a school resource officer at East Columbus High School. Such evidence showed that [Mr. Devalle] has exhibited highly favorable traits, including

but not limited to helping, teaching, and serving as positive role models for students at East Columbus High School not only as a school resource officer, but as a coach in two sports. Sheriff Greene and Principal Johnson opined that [Mr. Devalle's] absence from their respective entities would have a negative impact on their workplaces. The scope and magnitude of [Mr. Devalle's] character traits, as witnessed by Sheriff Greene and Principal Johnson, qualify as extenuating circumstances which the [Commission] should consider in determining whether [Mr. Devalle] possesses the good moral character required of a justice officer.

The Commission further concluded:

24. Sheriff Greene and Principal Johnson testified that [Mr. Devalle] has rehabilitated and rebuilt his character, since being fired by the [Highway] Patrol, and as a deputy sheriff, and as school resource officer and coach at East Columbus High School. Greene and Johnson testified that for two and a half years, [Mr. Devalle's] service as a deputy sheriff has been nothing but exemplary both of that service and of [Mr. Devalle's] character while engaging in that service. Such testimony was credible, honest, and believable.

Despite the above credible evidence of Mr. Devalle's present moral character, the Commission found that, while testifying on cross examination before the administrative law judge, Mr. Devalle

exhibited a lack of candor and sincerity during cross-examination by [the Commission's] counsel. During [the Commission's] questions, [Mr. Devalle] was evasive and feigned a lack of memory or confusion in response to [the Commission's] questions about [Mr. Devalle's] conduct with the [Highway] Patrol in 2016. [Mr. Devalle] remained evasive and elusive even after having his recollection refreshed with his prior statements. In contrast, [Mr. Devalle] readily recollected circumstances from this period, when questioned by his own counsel, without having to

review any materials.

The Commission therefore concluded that "the most recent demonstration of [Mr. Devalle's] character was the hearing itself[,]" and denied Mr. Devalle's certification for a lack of moral character.

We agree with the trial court these findings and conclusions do not conform with the standard the agency applied in *Royall*. By failing to apply the same standard to similarly situated individuals, the record in this case is one "which indicates arbitrary, discriminatory or capricious application of the good moral character standard" by the Commission. *In re Willis*, 288 N.C. at 19.

The administrative law judge who heard the evidence in this case found and concluded the following regarding Mr. Devalle's conduct at the contested case hearing:

> 69. At hearing, [Mr. Devalle's] testimony exhibited a lack of candor and sincerity during cross-examination by [the Commission's] counsel. During [the Commission's] questions, [Mr. Devalle] was evasive and feigned a lack of memory or confusion in response to [the Commission's] questions about [Mr. Devalle's] conduct with the [Highway] Patrol in 2016. [Mr. Devalle] remained evasive and elusive even after having his recollection refreshed with his prior statements. In contrast, [Mr. Devalle] readily recollected circumstances from this period, when questioned by his own counsel, without having to review any materials.
>
> 70. During his case in chief, [Mr. Devalle] presented significant evidence demonstrating that [he] has rehabilitated and rebuilt his career since 2016 and 2017 while working as a school resource officer at East Columbus High School. Such evidence showed that [Mr.

Devalle] has exhibited highly favorable traits, including but not limited to helping, teaching, and serving as positive role models for students at East Columbus High School not only as a school resource officer, but as a coach in two sports. Sheriff Greene and Principal Johnson opined that [Mr. Devalle's] absence from their respective entities would have a negative impact on their workplaces. The scope and magnitude of [Mr. Devalle's] character traits, as witnessed by Sheriff Greene and Principal Johnson, qualify as extenuating circumstances which the [Commission] should consider in determining whether [Mr. Devalle] possesses the good moral character required of a justice officer.

The administrative law judge concluded that "*[e]ven given [Mr. Devalle's] cross-examination testimony at hearing*, the totality of the evidence rebutted the finding by the Probable Cause Committee that [Mr. Devalle] lacks the good moral character required of a justice officer and showed that [Mr. Devalle] has rehabilitated his character since 2017[,]" and that the "credible and persuasive testimonies by Sheriff Greene and Principal Johnson demonstrated that [he] has restored his character so that he now possesses the good moral character required to continue certification as a deputy sheriff." (Emphasis added).

As the Commission made clear in its statement of the applicable law in *Royall*, it would only be cases of severe conduct that may serve as the basis for a finding of lack of good moral character and, where evidence of rehabilitation is presented, the question becomes one of time and growth. Neither the Commission nor the administrative law judge made a finding in this case that Mr. Devalle's conduct with the Highway Patrol in 2016 was severe, and the Commission made a finding

concerning rehabilitation. The Commission found Sheriff Greene and Principal Johnson's testimony was "credible, honest, and believable" and that Mr. Devalle had "rehabilitated and rebuilt his character."

In view of the Commission's findings that Mr. Devalle has rehabilitated his moral character since the 2016 conduct and the lack of a finding or substantial evidence that Mr. Devalle's conduct on cross examination was severe, pursuant to the Commission's own standard expounded upon in *Royall*, we agree with the trial court the Commission erred and applied an arbitrary and capricious decision to Mr. Devalle. The evidence and findings fail to show severe misconduct amounting to a lack of good moral character as a matter of law. *See In re Rogers*, 297 N.C. at 58 ("Whether a person is of good moral character is seldom subject to proof by reference to one or two incidents."); *Rector*, 103 N.C. App. at 532 (quotation marks omitted) ("Administrative agency decisions may be reversed as arbitrary or capricious if they are patently in bad faith, or 'whimsical' in the sense that they indicate a lack of fair and careful consideration or fail to indicate any course of reasoning and the exercise of judgment.").[6] We agree there is a lack of substantial record evidence to support the Commission's conclusion Mr. Devalle presently lacks the good moral character

---

[6] In *Royall*, the Commission held "[t]he substantial evidence of [the petitioner's] good moral character [was] clear and compelling" in light of Sheriff Jack Henderson's "very telling" description of the petitioner that "He's the kind of guy, if he's cutting a watermelon, he'll give you the best piece." *Jeffrey Gray Royall v. N.C. Sheriffs' Educ. and Training Standards Comm'n.*, Final Agency Decision, 09 DOJ 5859 (2011).

required of justice officers in North Carolina warranting indefinite denial of his certification, *see Rector*, 103 N.C. App. at 532 (quotation marks omitted) ("[T]he whole record rule requires the court, in determining the substantiality of evidence supporting the Board's decisions, to take into account whatever in the record fairly detracts from the weight of the Board's evidence."), and affirm the trial court's order reversing the Commission's decision and ordering it issue Mr. Devalle his justice officer certification retroactive to August 2017.

## CONCLUSION

Mr. Devalle's petition for judicial review provided adequate notice to the Commission, and the Commission applied a heightened good moral character standard to Mr. Devalle than that which it has previously enumerated when it denied his justice officer certification indefinitely such that its decision was arbitrary and capricious. The Commission's denial was further unsupported by substantial evidence. We affirm the trial court's order reversing the Commission's final agency decision. The Commission's imposition of the sanction of a five-year denial and suspension thereof for five years for willfully failing to discharge duties was not appealed and is thus binding on the Commission.

AFFIRMED.

Judges TYSON and WOOD concur.